This is a case where the lawyers want to play badminton. You're welcome to go across the net as many times as the clock will allow you. Thank you, Your Honor. May it please the Court, I'm John Newport. I represent the appellate, U.S. Bank National Association, in this appeal. And I will be reserving some time for my next up. For purposes of argument, I'm going to focus on three issues in this case. First, was it proper to permit a person who's neither named in the easement nor a party to the easement to enforce the easement? Second issue, should the Court have submitted to the jury the bank's jury interrogatories that dealt with the scope of this fee waiver? And then the final issue is, was the bank entitled to submission of a jury instruction on unilateral mistake? The first issue is, in our view, the most important issue. In this case, we have a 25-year easement in which Pacific Bells, Inc. sought to enforce that easement and benefit from that easement. Pacific Bells, Inc. is neither mentioned in the easement nor is it a party. But wasn't it true that the parties treated Pacific Bells, Inc. as being covered by the easement? There is evidence that the parties did treat Pacific Bells, Inc. as covered by the agreement. And that was for how many years? Probably four or five years. There is no question there was evidence that could have been submitted on the question of reformation of the easement. No question, had there been a reformation claim in this case, that that would have been a proper claim in the case. That isn't the issue from the bank's point of view. You answered Judge Connolly's question in the affirmative that there was evidence that they treated Pacific, Inc. in accordance with the easement. It's quite a concession, because once you concede that, you might as well sit down. Are you sure that's really what you want to say? Well, I can't contest the evidence that... Well, the evidence is that they gave them free checking. But they gave me free checking, too, and I'm not in the easement. My bank gives me free checking. What you're conceding is a connection between the free checking and being treated as on account of the easement. And as I say, that's pretty much the case for you. I'm really surprised that you are... Well, put more money to give that one away, because I'm not sure you need 20 minutes after that. I don't know that you have very much choice. The correspondence was all with Pacific Bills, Inc., or a lot of the correspondence before the easement. The easement's entered into. It only applies, as you would say, to the accounts that then existed. And at that time, Enterprises had no account, but Inc. did. Isn't that awfully powerful evidence that what you said is exactly right? They treated it as if it were Pacific Bills, Inc. That's what they thought. The people that negotiated it. You guys took over later, right? Correct. The people who actually negotiated it, the bank and Pacific Bills, Inc., thought that it was covering Pacific Bills, Inc. account, obviously. As I say, there is no question but what if there had been a reformation claim in the case, that would have been a permissible claim. The issue is in interpreting words of a contract. The question is the court must interpret the words of the contract. In the guise of interpreting a contract, one does not rewrite the contract. And where you have a situation such as this, that the contract defines who Pacific is and defines Pacific as a person other than Pacific Bills, Inc., Pacific Bills, Inc., for purposes of contract analysis, is a stranger to the document. This is a classic case where the parties really treat them as not being a stranger, then that sheds light on how the contract is to be interpreted. And if both sides treat Pacific, Inc. as having been a party, then maybe they are a party. I don't know. It depends, again, on how much you want to concede here. If the parties decide, the lawyers decide when they're talking because they're strange people, let's say, in this case, whenever we say rabbits, everybody knows we're talking about horses. And so we're going to put rabbits throughout this contract. But we mean horses. That's what it is. A rabbit's a horse as far as they're concerned. When we say Coca-Colas, we mean cocaine. And so Coca-Cola's in their contract. That's a contract interpretation question. It ain't necessarily a reformation question. Isn't that right? No, that is not right. I think that is a reformation question. Because if what the parties intended when they used rabbits was to mean horses, what they should do is reform the instrument to say horses. You cannot, under the guise of interpreting the words rabbits, say they're a horse. No, they're not trying to reform it. They're saying that's what we call those things rabbits. Those things, we call them rabbits. That's what we call them. But when courts are called upon to interpret words used by others, the ordinary language is interpreted to mean what the ordinary language is. And it's especially important where you have a situation like this, where U.S. Bank succeeds to the interest in a contract negotiated by somebody else. And this is a 25-year easement. U.S. Bank did not negotiate this instrument. U.S. Bank took over after this instrument came into being. Pacific Bells, Inc. is not named in the instrument. I think this was a strategy decision by plaintiff's counsel not to seek reformation of the document, because the minute they got into a reformation claim, then we, U.S. Bank, could seek to reform the instrument to have it include only those accounts which existed at the time of the arrangement and have that mean only the restaurants which utilized those accounts. What this Court did was, under the guise of interpreting an instrument, reformed the instrument. You cannot read the Court's declaratory judgment other than to say this is reformation under the guise of interpretation. Let's say we don't buy that. Let's say that we say it is interpretation. Is that the end of your argument? No. The next argument is that that issue should have been submitted to the jury, because there was facts on both sides. What the Court did was decide for itself as a matter of law. So what do you do with your answer to Judge Carney's question? How does that fit in that model of analysis? Well, you say that the bank, your predecessor, Northwest National, treated, if I understood the question, if I understood the answer, was that they treated Pacific Inc. as being a beneficiary of the easement. I don't want to put words in your mouth. I just want to make sure I understand what you actually said. That is, there is evidence that the bank fought. The question you were specifically asked about is how they treated, not what they thought, but how they dealt with Pacific Inc. And I thought that was the question, and I thought your answer was the bank, Northwest, dealt with them as if they were covered by the agreement. Now, you can change your answer if I misunderstood or if you misspoke or anything else, but I just want to make sure we are starting from the same point. There is evidence. Was that your answer? Yes. There is evidence in the record that Northwest treated Pacific Inc. as being within the scope of the fee waiver. Is there any contrary evidence? The contrary evidence is the document itself. The contrary evidence is the testimony by the lawyer that all the corporations were kept intentionally separate. There is contrary evidence. There is evidence to the fact you admitted to, and that is, that's how they treated them. That is how they treated them? That's undisputed, right? You're conceding that the bank treated them as being covered by the easement. There is evidence to that effect, but there is contrary evidence. You say there's contrary evidence, but is there contrary evidence they did not treat them as being covered by the easement? No. Okay. The fact is how the bank treated them, okay? And that is a fact, and there's no contrary evidence on how they treated them, right? Correct. Okay. What do you do with that fact? You weigh that fact against the other facts in the case, the other facts in the case being that Pacific Inc. is not a party to the contract, that Pacific Inc. We're beyond that, remember? We're assuming for the moment that it is indeed. We're beyond your argument about reformation and such. Well, there can be lots of evidence on both sides of an issue, and the mere fact that there is some evidence. Let me try to move this along. There's a fact that your client's predecessor treated them as being covered by the contract. I mean, it's undisputed that they did. And the question is whether that is binding or that's merely evidence of what the contract means. Is that what we ask? And what you want to argue is, yes, they thought and they treated them as being covered by the contract, but they were wrong. And their interpretation is not any more binding or any more dispositive than anything else. This is something that should have been presented to the jury, and let the jury decide based on that fact and anything else you can present. That's my point. Have I expressed it correctly? Yes. Okay. Now, let me probe that just so, because I think I now understand your position. Conduct by a party isn't just any old fact like, you know, we have people and people standing around and saying the light was green, the light was red, the light was yellow. This conduct by a party, to some extent, is in the nature of a stipulation, in the nature of a concession. And I'm wondering, do you think that is such a powerful fact that we took the matter away from the jury, which I think was what the distinguished judge thought was the case here? I do not think it rose to the level of withdrawing the issue from the jury in light of the fact that this was a 25-year easement with a time of performance to continue into the future. The bank could have mistakenly treated Pacific Bells, Inc. because it knew it was not a party to the negotiations. U.S. Bank easily could have done that. U.S. Bank was entitled to go to the jury on the question of whether, either for past performance or future performance, Pacific Bells, Inc. is a party to this instrument. That issue should not have been withdrawn from the jury, given that there was some evidence, you may disagree as to the weight of the evidence, but that there was some evidence that would have permitted a jury argument to the effect that Pacific, Inc. should not be entitled to enforce this instrument. Well, that's a problem. The parties – the thing is all mixed up in negotiations, obviously, and the letters so indicate. But the parties who actually enter into the entities, if I call the entities overall, the groups of people who enter into this contract, as soon as the contract goes down, both sides think that Pacific Bells, Inc. is entitled to this benefit. They both think so and they both act that way. They both behave as if it is. That seemed like terribly powerful evidence about what this contract was meant to mean. I don't disagree with that. That doesn't mean it's – And I ask you, how about the – what's the evidence on the other side? And you said, well, some lawyers didn't think so. They put on testimony that these companies were all kept separate and kept separate for very important reasons, because there were some restaurants that were covered by this, owned by the family of companies, and there were other companies that owned other restaurants that they admit were not covered by this agreement. So there is obviously some restaurants covered by this agreement and some not covered by this agreement. So from a standpoint of who, we consider that to be a fact issue from the jury. The next issue in the case is what's the scope. And it's important for the Court to understand that from the scope standpoint, what this was was trying to understand what existing accounts meant. The record evidence is that accounts were used for restaurants. A restaurant has to take all of the cash that gets generated by an account and go down and deposit it on a daily basis. So they had certain accounts for certain restaurants. But fee waivers aren't assigned to restaurants. Fee waivers are assigned to accounts. So the instrument says existing accounts are entitled to the benefit of the fee waiver. The question is, what does existing accounts mean? We tried to get the Court to submit jury interrogatories that would have permitted the jury to tell us which restaurants were covered by this instrument, because there were restaurants with accounts at other banks at the time of this, which they folded  Yeah, but, you know, the question is about whether you're sending interrogatories to the jury. I mean, can you think of a single case ever that's been reversed based on a district judge's failure to send in a civil case based on a failure to send in an interrogatory? This is the meat of what district judges do. This is kind of discretionary exercise. And if there's certainly no requirement of interrogatories, and if the district judge chooses not to interrogatory, we then have to read the jury verdict in the best light of a light-saver to a winning party. I agree it's an abuse of discretion standard. But I also, if you look at the interrogatories which we have proposed the Court submit to the jury, I don't think you can find that there is any issue with those interrogatories. What the Court did was confuse two issues that made it impossible for this jury to deliver a clear answer on what this easement and fee waiver meant. I'd like to reserve my remaining three, three-and-a-half minutes for addressing the other arguments that might come up. Okay. We'll hear from the other side. May it please the Court? My name is Leslie Johnson. I'm here for the plaintiffs' appellees, Pacific Bells, and the related companies. I want to address or first bring to the Court's attention that there are two overriding weaknesses with every one of the defendants' arguments and assignments. One is, as some of your questions already indicated, that there's essentially complete agreement between the witnesses on the Pacific Bells side and the witnesses on Northwestern Bank's side about what the parties intended at the time that they negotiated the easement and documented it. And all of U.S. Bank's argument at trial and our appeal are argued. You had what was the evidence on the part of U.S. Bank that agreed with the interpretation of that? My first reference was to Northwestern Bank, the original bank. Well, I understand. I understand. No, no. Let's talk about Northwestern Bank. Don Martin People say, yeah, we meant to include Pacific Inc.? Yes. Don Martin was the principal negotiator for the bank, and he testified on several occasions that he meant the language of the easement, that the deal he was making with Pacific Bells was to include all the accounts that they had at that time. No, but did he say include Pacific Inc.? Yes, he does. In the correspondence, the exhibits that the defendants cite, the correspondence refers regularly to Pacific Bells, Inc., because that's the chief operating You're not going to answer my question. There could be lots of correspondence that includes Pacific Inc. There could be lots of, you know, there's this testimony saying I meant to include all existing accounts. Does he say we meant to include Pacific Inc.? Is that testimony that says when we said Pacific Northwest in the easement, we actually meant that term to mean Pacific Inc., to include Pacific Inc.? Is the testimony to that effect? Well, Your Honor, Pacific Inc. is an abbreviation that the defendants are using. Why don't you start with a yes or no? Okay. Is the testimony where he says when we said Pacific Northwest, we actually meant to include Pacific Inc.? There is. Is there anything like that? I'm trying to, I think the reason that we're having a problem, Your Honor, is there Why don't you just say yes or no, if there is. There is no reference to an entity called Pacific Northwest. Okay, so there's not. There's not. So what do you have short of that? You don't have the gold standard. You don't have an admission. You have something less than that. So what have you got? The correspondence leading up to the easement says Okay, well, talk to me about it. Let's look at it. I've got the excerpts of the record right here. Point out what exactly you've got there. That's so good. Let's see if I can identify them by exhibit numbers, Your Honor. I have deposition, or I'm sorry, trial testimony by Dennis January and Tom Cook on the side of Pacific Fells and by I'm sorry, where Do you have an excerpt of records reference? My references are to the trial transcript. The date is December 10th for Mr. Martin, who is the bank's chief negotiator, at pages 57 and 58, and that the bank's lawyer his indication that the bank's lawyer is drafting the easement at pages 62 and that they're having difficulty figuring out how to refer to the entities, but that his meaning You know, it's very hard when you come to oral arguments, you don't have your citations to the excess of record because then we can't look at the same page. I understand that, Your Honor. What are you talking about? Why don't you read me what you think, what they say. I don't have the full trial transcript in front of me. Mr. January says all fees for all accounts I'm sorry, this is a trial transcript. Yes. But this happened before. This is a ruling that happened pre-trial, didn't it? No. The ruling was with respect to the entity Pacific Bells, Inc. happened at trial. At trial. There are two parts. Before the case went to the jury. There are two parts to the defendant's assignment. One is that they moved for judgment against the pleadings that Pacific Bells,  should be excluded, and that motion was denied on the basis that the pleadings indicate that Pacific Bells, Inc. was intended to be included in the easement at the time, and it benefited from the fee waiver for all the years after that until U.S. Bank changed its position. When did that happen? U.S. Bank changed its position. No. When did that happen? The denial of the motion for judgment on the pleadings? Yes. Pre-trial. Okay. So that was denied. It goes to trial. And when is the next ruling when the judge takes the issue away from the jury? We're working on the jury instructions, and there's a disagreement about whether there should be an instruction to the jury about whether Pacific Bells should be included. And at that point, Judge Leighton rules that as a matter of law, he understands that the easement includes all the entities and all the entities that we refer to. And when were the jury instructions being worked on in relation to the trial? Like the last day of the case. So this is happening while testimony is going on. Let's see if I can pin down. This was not done pre-trial. This was done during the – sometime during the trial. That's right. Okay. Now tell me what it is that you are relying on. Why don't you read it? Well, I'm not sure if I have the moment marked where the judge makes the decision, but I believe it's at the end. No, no. I asked you what evidence there is. You said there's all this undisputed evidence that they concede that Pacific Inc. was included. And I said, okay, well, show me. He – And I'm – that's what we were. What I'd like to do, Your Honor, in the interest of being sure I get to all my arguments, is start from the point where Mr. Newbert concedes that the evidence shows that Northwestern Bank treated Pacific Bells Inc. as included within the fee waiver. But he did not concede, when he should have, that U.S. Bank did the same thing. In 2000, recall that U.S. Bank acquires the Northwest accounts, and even at the time – Well, but let's say he concedes that they treated them the same way. So what? That's very different from saying we meant for them to be included, or that's what we intended when we negotiated it, and that's how the – they could have been mistaken. They could have said, gee, you know, we want the business, and we're giving lots of free accounts to lots of people. We'll include them anyway because we need the cash. I mean, there's lots of reasons they might have, in fact, treated them as if they were covered, even though that's not what the original contract called for, or that's not what the negotiations intended. So that's why I asked you the question to begin with. You said there is undisputed evidence that that's what they intended. Okay? And, you know, what that would be is one of the negotiators saying, you know, that's what I intended, in so many words. You don't have that. No, that's not true, Your Honor. Okay. Tell me. Tell me. The pages that I indicated of Mr. Martin's trial testimony that – Martin's is one of the negotiators? John Martin is the chief negotiator for the bank. Okay. And the testimony is on December 10th. And – and – The pages of the transcript, according to my notes, are – December 10th. Okay. It's on ER 103. This is Creighton, Creighton. No. I don't believe, Your Honor, that – You didn't include them, huh? It's in defendant's excerpts of record, and I don't believe I noticed that it was not in the excerpts at the time that I identified the supplemental excerpts. Bad loyalty. For that, I apologize. It's your client. You're a partner. What does it say? Yeah. The – the other part of the record that I would encourage the Court to look at. What did he say? Mr. Martin said that – Look at Mr. Martin. You said Mr. Martin testified and – Mr. Martin – Wait a minute. And then we go off on all kinds of tangents. What specifically did Mr. Martin say? That's all. What did he say? Mr. Martin said that he instructed the bank's counsel that the deal was to include all the existing accounts for all the entities. And the parties in their correspondence leading up to the drafting of the easement over a period of two years refer most often to Pacific Bells, Inc., because that is the operating entity with the bulk of the account activity. The second step to that, I take it, is he said to include all existing accounts. And that – and existing accounts, if that's what it meant, were K, whatever that company is, K accounts and Pacific Bell, Inc. accounts and no enterprise accounts. That's right. But Pacific Bells Enterprises was listed at the top of the easement because it was the landowner. And there was – How do we know that second link exists? He says all existing accounts. And you want to fill in. When they mean that, they mean Pacific, Inc. But that's not what he says. You're not quoting him. This is something that you are getting someplace else. That's true, Your Honor. Okay. So where is that someplace else? You understand? Because if you don't do that, then you don't have the thing I asked for, which is evidence from the negotiator saying Pacific, Inc. is included. So where does this other thing come from? As you indicated, the U.S. Bank is trying, as a Johnny come lately, to impose a different interpretation on that language. Did you understand my question? I did. Okay. Why don't you answer my question? I don't care about the giant corporation and late interpretation. I ask a simple question. When the negotiator said all existing accounts, you stand there and represent, he really meant, he must have meant, he could only have meant, Pacific, Inc. That has to be based on something in the record. What is that thing in the record? I don't want some metaphysical answer. I want a citation to a specific witness, a piece of testimony, a piece of document evidence in the record. Mr. Martin testified that that's what he meant, and that's what he instructed her to do. And where did he do that? December 10th, pages 55 and 56. Read it. I can't do that, Your Honor. I don't have those pages before me. I'm sorry. Okay. What do you recollect that he said? I recall that he said explicitly in answers to multiple questions from on cross-examination that he meant to include all the accounts that the Pacific entities had at that time. You know, I think this is, I don't know, third base again. The question, you're answering the same question with the same, the question with the same set of answers. Include in the same all the accounts. The question is when it says all the accounts, how do we know that this involves Pacific, Inc.? Because Mr. He could have meant all the existing accounts for Pacific Enterprises, right? No, Your Honor. Mr. Martin also testified that he knew about the corporate makeup of Mr. Bell's business at that time. He knew that there was a different entity that owned the property, and he knew that Pacific Bells, Inc. was the principal business that operated the Taco Bell stores. Okay. So? That's in that same section that he's answering questions on cross-examination. How does that explain, how does it explain what he means by all existing accounts? Because he knew when he said, he knew at the time that they had all this business, that they had multiple accounts with multiple entities. And you I mean, it sounds to me at best what you've made up is a pretty good influence that you could argue to the jury. If you say, look, he said this, and then he said this over here, and this is something he argued to the jury, that what he said was, look, they meant to include that guy. You know, it's an argument the jury might buy or not. But how do you take an issue like that away from the jury? Well, one, we didn't ask the court to do that, Judge Layton. That's a response I Well, I understand. But these two judges are there, you know, and the parties have to bear the brunt of it. If a judge heard, even though you didn't ask him to, that's, you know If I may, Your Honor, I think one of the reasons Are you confessing here? I, no, I'm not. And part of the reason is I'm having trouble bringing to the Court's attention I think one of the items of evidence that took Mr. Judge Layton to that place. And that is, even in 2002, when U.S. Bank indicated that they believed that they had some right to impose a limit on the easement, they didn't communicate that they were taking Pacific Bells, Inc. out of the fee waiver. Well, I don't know how that helps you, Annie. Because it belies the argument that they make at trial that These are all inferences. These are all facts that you could argue to a jury. Look, this is how they acted. This is how the bank acted later. And the jury might very well buy the argument and find a new favor. But it's very different from saying, This is so clear-cut that no rational jury could find other way. I mean, you have to find something pretty strong for that, For a judge to take that kind of issue away from the jury. And I think the more you struggle with it, You know, the fact that you don't bother to put in an extra Strikes me as pretty good proof that this was not so clear-cut. Because I think the way, the reason that Judge Layton made the decision is he, Looking at the record, saw that all the evidence, all the factual evidence, Much of it objective, documentary evidence, was that the parties intended Leading into the easement to include Pacific Bells, Inc. and these other accounts, And the parties treated the easement for all the time after, through 2001. If you had been at bench trial, you would have been home free. But the question is not how the district judge saw it. The question is whether or not the matter was so clear-cut on the record That the district judge was entitled to take that issue away from the jury. That's the question we have to answer. And that's the question the district judge should have answered. And the fact that you guys didn't even think that was the case Strikes me as more proof that the district judge should just simply go, District judges are wrong. I want to be clear, Your Honor. I'm not conceding that there was a disagreement in the evidence. And I think what Judge Layton saw and the jury ultimately saw Was the difference between evidence of many years' But the jury didn't have a chance to rule on this issue. I want to disagree. Even if the jury disagreed, it had no chance to express itself Because it was something not submitted at all. I can't disagree that the jury didn't get to reach the issue When the judge made his decision. I want to save my last few minutes on our cross-appeal On the Consumer Protection Act claim. Okay. Going back to the issue that is of the greatest interest, There's two times that this is important. One was when we moved for judgment on the pleadings. At that point, there was no record evidence of anything Other than what the pleadings were and the allegations of the complaint. If you look at the allegations of the complaint, The allegations of the complaint attach the easement. There is no way the Court could have denied the motion for judgment on the pleadings When you compare the allegations of the complaint To the instrument that Pacific Bells, Inc. was seeking to enforce. At that point, the only thing before the judge were the pleadings. The Court had to decide based on those pleadings. Those pleadings could not be construed in any manner or means To say that Pacific Bells, Inc. Why are you talking about that point in time? Why am I talking about that point in time? How does that help your case, then? Because we assigned error from the failure to grant us judgment on the pleadings. Actually, you think you were entitled to judgment on the pleadings, so that's fine. Yes. Against Pacific Bells, Inc. I see. Only against Pacific Bells, Inc. I see. And if at page 21 of their red brief, what they say the district judge did at that point in the case was the Court found that Pacific Bells, Inc. was a party to the easement. The Court could not find that based on the record that was before the judge at that point. Well, but we're reviewing it now. And at this point, we review the record in light of what evidence has actually been No, not from the review. We have case law that says that if district court, even if it wrongly denies summary judgment, if there's an evidence at trial that fills in the gap, we don't go back and grant summary judgment. I hadn't seen those cases cited by counsel. Yeah, we don't go back and mess with those things because it's gone beyond it. Was there a pretrial order in this case, by the way? Pardon me? Was there a pretrial order in this case setting forth the issues? There was a pretrial order. It was never signed. And it is in the excerpts of record. And if we go beyond the motion for judgment on the pleadings, we still have the question that there was evidence on both sides of a jury issue. That relates to Judge Fernandez's earlier question. I still don't think the answer. When you say there's other evidence, other than the wording of the agreement, what other evidence do you have to suggest that Pacific Ink was not covered? The fact that the instrument does not cover Pacific Ink. Anything else besides the wording of the agreement that you wrote? And the absence of any testimony that somebody said we intended to mean Pacific Ink when we used Pacific Bells. Well, that's an absence. That's it, right? That's your evidence? No. And the fact that there were existing restaurants for other Pacific entities in existence at the time that the parties undisputably agree are not covered. So we heard counsel say that there was evidence in the record that all existing accounts for all the entities were intended to be covered. We know that is not true because we have undisputed evidence in the record that there were restaurants in Ohio owned by these same Pacific entities that were not intended to be covered. We know that there were restaurants covered in U.S. bank accounts at the time that were not intended to be covered. And so we have a lawyer, presumably instructed to include everything, and the lawyer does not. The lawyer does not testify. The lawyer does not say, oops, I made a mistake. There is no evidence in the record that somebody … When you say U.S. bank accounts, do you mean Northwestern or do you mean U.S.? No. At the time, Pacific had restaurants in Vancouver, and Pacific had restaurants in Oregon. The Oregon restaurants used U.S. bank accounts. So they were not accounts at this particular bank. Correct. So if they said all accounts at this bank, we intended to cover all of our accounts, that sounds like a red herring. Pacific had accounts both places. And so … What do you mean by both places? Pacific had accounts at U.S. bank and … But this easement is not signed by U.S. bank, is it? That is correct. All I'm saying is that there … Well, I understand what you're saying. I'm trying to make some sense out of it. So the bank that entered into this contract, are you saying there were accounts at that bank that entered into the contract that were not covered? No. Oh, okay. No. I'm finished. My time is finished. If there are no other questions, I will sit down. Thank you. I'd like to direct the Court's attention to the supplemental excerpt record at page 61. I believe it was trial exhibit 42. 61? 61. And the supplemental excerpt, it has a list of the bank accounts at the time. You know, my supplemental excerpts of record are not consecutively paged. Actually, 61 is what should be a tab. Page 62, 61. I see. List of active NWNB accounts. Is that what you're looking at? Yes. Trial exhibit 42? Yes. Okay. Only because … Okay, I'm looking at it. The bank just argued that there were specific accounts at NWNB that were not included in the easement, and that's not an accurate statement. Mr. Cook and his businesses had other Taco Bells in other parts of the country that weren't using NWNB, and he had other Taco Bells that had accounts at U.S. Bank that were obviously not part of the deal originally with NWNB. But all of the accounts that were open at the time at NWNB, according to the testimony of the bank's negotiator, Mr. Martin, and Taco Bells or Pacific's negotiator, Mr. Cook, were intended to be included in the easement. I want to spend the last couple of minutes on the Consumer Protection Act claim because the judge's decision was based on a mis-framing of the concept and why the Consumer Protection Act claim is viable and ought to have gone to trial. That is that the court was focused on the fact that the relationship was based on an easement document, which was something somewhat unusual, when, in fact, the claim is focused on the fact that in a context of a contract dispute where the party on the other side happens to be my client's bank and knows there's a disagreement about what the respective rights are of the account, the bank, on the fee waiver, the bank reaches into the client's accounts and takes money out of the accounts without authority to do so. We have cited to the Court, and the contest was largely about whether that's a matter of public interest. I wanted to be sure the Court noted our citation to authority that indicates that banking business generally is a matter of public interest and that the Hangman Ridge case, which defendants' argument relied on heavily, articulates a set of four questions that apply to direct the Court's attention in the Consumer Protection Act analysis to the fact that the violation is in the act of the bank reaching into its client's accounts, where Hangman Ridge says, 719p2 at 538, that the way to determine whether it's a matter of public interest is one. Isn't that how banks collect fees on their accounts, is by reaching into their accounts? I mean, you make it sound so dirty, but, you know, you have money in an account, fees are assessed against it, and the bank, it's just an entry in an account. I mean, it's not like they actually sort of go into a piggy bank or, you know, they open up a safe and take out dollar bills. They enter an entry in an account, and then if you disagree with that, you go to court and litigate about it. I don't understand how else they're supposed to operate. Because, Your Honor, they had when banks typically withdraw fees from accounts, it's because they have a contract with their customer that they can take fees out of their accounts. They claim they have a contract here. They have an account agreement. You say, no, we've got this other side agreement that says you're not entitled to collect those fees. But I'm sure that if you read the agreement on the account, the account says there will be only fees, right? No, Your Honor. I don't think that's the case. That in a situation, if this was a contract relationship with a party other than a party wouldn't have the ability to immediately act on their unilateral interpretation and take property or take money of the party on the other side of the dispute. It was the fact that they had to. But I guess the problem I have is I don't see how you differentiate this case from any other dispute where somebody disputes a fee assessed by the bank. The bank says you have a balanced check fee, and they go in and they charge you $5 or $10 or whatever it is, $25 these days. And you say, no, no, that wasn't a balanced check because of that. So now you've got a dispute. Does the bank become liable under the statute because they went in and they took their money out thinking that they're entitled to it? Do they sort of never have a right to assess an account for fees unless the customer says, yes, go ahead and take it? I don't understand your position. I think the bank law and common law in a situation where the bank is holding your accounts in trust anticipates and all customers anticipate that the bank cannot in this situation announce after several years of conduct, you are wrong and I am right and begin to take money out, that that is a matter of public interest and it changes the relationship between banks and their customers. This is just a dispute. You know, your client disputes the fees. They say we're entitled to fees. Normally banks take out the fees. And then if you don't like it, you go to court and litigate about it. I don't see how you're trying to make it sound a lot different, but it doesn't sound to me like it is. I can see that, Your Honor, and I'm out of time. You are out of time. I do think there's a significant shift in that economic relationship. And if the Court does not overturn the ruling in this case, it sends a message to this bank and other banks that any time that there is doubt about ownership of funds or a right under a contract, that there isn't a significant consequence to them acting on their unilateral interpretation. I think that should be a matter of policy concern. Thank you very much. Okay. The case is now your chance to vote.
judges: Kozinski, Fernandez, Carney